Okay, we're going to move to our third case today, which is Little v. The City of Valley, Alabama. Should we only have three today? Oh yeah, we did do that on the briefs. Okay, Mr. Clark. Good afternoon, and may it please the Court. My name is Brian Clark, and I represent the plaintiffs in this case. This is a Section 1983 claim where there are issues of causation and issues as to the proper application of Monell v. Department of Social Services. The district court below improperly conflated causation as it's used in Monell with causation as it's used for proximate cause. That resulted, the reason, the causation in Monell is a result of the statutory construction of Section 1983. Causation for proximate cause is traditionally and historically analyzed under state law analysis, and that would be, generally speaking, foreseeability analysis. To understand that Monell is not about proximate cause, all one needs to do is do a search in the text of Monell for the word proximate cause. It doesn't exist. Even if you do a search for the word causation, it only exists one time in the text of the case. And what causation in Monell means is that the deprivation complained of must result from a policy, not from the actions of any individual actor of the municipality. And that goes back to the statutory language of Monell, where it says every person who, under color of any state statute, ordinance, regulation, customer usage, subjects or causes to be subjected. I'm having a hard time understanding how the city can be held liable for the state officials' conduct. The state officials are the ones who make decisions about arrest and bail determinations. Just as a matter of law, I just don't see how that's something over which they have any control. Well, that's the test that the defendants posit in this case as a control over the court test. That's not what the test is. The test is, was it reasonably foreseeable when they referred these cases for criminal prosecution? Those state officials make independent determinations about whether to arrest or prosecute somebody. That's not something over which the city has any control. The city does have control. The city... The city can refer somebody for potential prosecution, but the state officials have to make those decisions independently. I mean, I know how the law works in Alabama. That's not something the city can force state officials to do. And in fact, didn't the DA now, actually for Chambers County, announce that he would not prosecute for unpaid garbage fees? After this case was filed yesterday. I understand that, but doesn't that cut against the argument that in fact, I mean, the city doesn't control? No, not necessarily, because Section 1983 is not aimed at actions per se. In other words, we all know that language. It's certainly focused on who is the proper defendant. Well, Section 1983 is focused on policies. And a policy would be a range of choices amongst alternatives of the city of Valley when they... Policy or custom matters when you're suing a municipality and you have to establish that what some employee or agent did was actually attributable to the municipality. Well, I understand that. But here, the problem we have here is you're complaining about the city causing something to happen that is totally within legally the control of separate state government officials. When you do the, I think, proximate cause analysis that we're talking about now, because we're beyond that, you are going to take two steps with that. One, was the referral of these cases for criminal prosecution the but-for cause of these people being jailed for violation of a statute that doesn't allow for jail? No question about that. The court, the district court below even said that. In other words, these prosecutions don't happen unless the city makes criminal prosecutions at which they had other remedies. They very well... I'm not at all sure that it's a matter of law that that's true. I'm not sure it matters. I mean, if the city had not referred them for prosecution, I don't... And let's say it was a prosecutable charge, okay? And the state officials on their own decided to do it, they would have the authority to do it. The DA has the legal authority to decide who to prosecute or not. In fact, the Attorney General of Alabama could do it as well. Back to the fact that there's nothing in the record that indicates that these people would have been prosecuted on their own without... As a matter of law, though, that is a fact, isn't it? As a matter of fact, in this case... Prosecutors in Alabama have the sole discretion to do that. As a matter of fact and the record in this case, all of these prosecutions were kicked off by the filing of a complaint by the town, by the city of Valley. Are you aware of our recent decision in Coley Pearson? Yes. Can you describe how you got around Coley Pearson? Your Honor, can you help me out as to exactly what you're referring to? Oh, sorry, you're not aware of the case? I'm not as aware of it as you are, obviously. Okay. I'm sorry. But my understanding is that in Coley Pearson, we specifically said that when it comes to causation under Section 1983, the overarching rule is that where a deliberative, autonomous decision-maker stands between a defendant's actions and the plaintiff's injuries, the defendant's actions cannot be the cause of the plaintiff's injuries under Section 1983. And then we go on to give examples when an intervening actor does not act deliberatively and autonomously. And I don't see any of those examples in this case. So I'm wondering how you get around what the court said. The way you get around that is the traditional analysis of foreseeability. You're not talking about a case here where you have a one-off practice of, oh, this person was prosecuted for not paying their garbage bill. You have a long 10, 12, in this case at least 13-year history of doing this. And the law is that once you prove but-for causation, that causation is not broken unless what happened was unforeseeable. In this case, the record is complete. Is there any instance, for instance, in Coley-Pierce, we say if there's coercion or extraordinary influence over the actor, is there any sort of evidence you can point to that that sort of exertion was being placed on the prosecution from the city, that there's that sort of coercion that they talk about in that case, or personal participation, something like that? No, Your Honor, but there is a long history of them prosecuting people under a statute that does not allow for jail time for not paying your garbage bill. You've got something that's patently a substantive due process violation in this case. Is that patently a substantive due process violation? Charging someone with an offense under Alabama law that you say does not provide for imprisonment, so it may well be a violation of Alabama law to pursue imprisonment where imprisonment's not provided. Is that a – it's not clear to me that that's a violation of the Constitution. I'm sorry, Your Honor. It's not clear to me that that's a violation of the Constitution. Well, it's the arbitrary denial of something that's firmly rooted in our constitutional tradition, and that is your liberty interest. And how can it – it's nothing but arbitrary. Look, prosecutors ask for penalties where they may be overreaching. Right. And defendants get to say to the court, the statute doesn't provide for that penalty. That's not a punishment that's allowed for under state law. It's not clear to me where there's a constitutional deprivation by just pursuing the charge. Well, but there is when somebody has got their liberty interest taken away under a statute that does not provide for that. And in the event that the person actually suffers the punishment, the punishment would be as a result of a judgment of a court, right? The punishment would be as a result of the judgment of the court that was kicked off by a complaint by the city, but for the actions of the city, none of the rest of that happens. And so once we get there, there's nothing in the 11th Circuit that says once you get there that you don't rely upon the common law principles of proximate causation. That is, does the city – are they on notice that when people are referred for prosecution for not paying their garbage bill that they go to jail, knowing that the statute doesn't provide for jail time? And the complaint, which is obviously a motion to dismiss, is replete with examples of how the city and Amway's knew about that. I mean, the second of the complaint, the second running complaint doesn't really talk about reasonable foreseeability or foreseeable consequences. The complaint lays out a history of these people being prosecuted and jailed over the last 12 or 13 years and says that Amway's and the city knew what was going on. But since it was other state actors and not the city who did it, you still have to – you have to plausibly allege that there was a foreseeable consequence to – I would expect the city to just expect that the prosecuting authorities are going to follow the law. Well, but foreseeability is determined by a longstanding pattern and practice, and we have that in this case. And I feel I'm running out of time here. I need to talk a little bit about Amway's and a RICO claim against them. The district court did very little analysis of the RICO claim other than to sort of broad brush by saying, well, if there is a legitimate purpose for the association in fact, then that cannot be RICO. Matter of fact, for it to be RICO, you have to have both a legitimate purpose and the criminal activity. And my red light is dinging, so I'm going to sit down now. Okay, Mr. Clark. Mr. Hyde. May it please the court, Ben Coulter for Amwaste, LLC. Amwaste is accused in this case of collecting garbage and theoretically knowing and agreeing to of the alleged bad acts of the city. But in fact, perhaps the most important portion of the complaint, which is also dispositive of issues in this appeal, is paragraph 92 of the complaint, which states, nothing changes when Amwaste took over the garbage collection contract in 2019. The allegations in paragraphs 30 and 31 are that there had been a longstanding contract between the city of Valley, which hired a garbage collection company to collect garbage, and then Amwaste took over that contract. In other words, it was hired by the city to collect garbage. This is not a situation, and I've got three distinctions that I think are really important. It's not a situation where Amwaste had a contract with a bunch of the residents of the city of Valley and then said to the city of Valley, hey, we need you to go out and collect fees for us. And whatever you have to do, if you have to break somebody's kneecaps, go ahead and do it. That's not the situation, and that's the difference between most types of bracketeering types of claims. Instead, it's a situation where the city of Valley engaged garbage collection companies to collect the garbage, and then the city of Valley kept it. So that's the first distinction. The second distinction is also based on the allegations in the complaint. Paragraphs 48 and 49 talk about the alleged bad motive in this situation, which was that the city collected garbage fees and took those garbage, when it paid Amwaste what it owed Amwaste, the city then transferred those garbage collection fees to its general fund. All right? That proves a little bit more than I think they wanted to prove, because what it proves is that Amwaste was in no way involved in a conspiracy, or I don't even plead a RICO conspiracy claim, but was in no way involved in a claim or an attempt to change or otherwise improperly enforce through violation of constitutional liberties or through the RICO claim. In no way was Amwaste involved or incentivized to be involved in improper or illegal collections. So on behalf of Amwaste, I have a very brief period of time. Ms. Hive is representing the city of Valley, and most of our time is for them. I think we have some confusion here. Valerie, he's representing Amwaste, not the city, and so he only asked for five minutes. Ben Coulter. You're not on my minute sheet as the lawyer who's going to be arguing. I had Callie Barrow listed as the lawyer for Amwaste. Pardon me? You didn't check in with her this morning, this afternoon? I'll stand you right here. There may have been miscommunication between the two of us. I'm certainly not confusing. You were only seeking to use the five minutes of time for Amwaste, is that right? Yes, Your Honor. Okay. Do you have anything else to offer? I think you were wrapping it up. I was just going to say, I'm not really going to speak too much about Monell liability. You were going to let Ms. Hive represent the city, right? Yes, absolutely. The only other things I wanted to make arguments about were the second claim, the RICO claims that are alleged against us. And I think there is one important distinction here that I don't think is really addressed fully by them. And, you know, the most basic thing you have to have for a RICO claim are predicate acts, right? And their predicate acts that they're claiming here is extortion under the Hobbs Act. We have on-point authority that we cite and the district court relies on, which says, in this case, because there is an entitlement to those fees, it has to be both wrongful implementation and wrongful means and wrongful objective. In this case, the Alabama Code very specifically allows for the collection of garbage fees. And Alabama Code 22-27-5, 22-27-3, which are referring to. And with the Malone v. City. Yeah, I mean, this argument has just totally gotten disorganized. Mr. Barrow, I'm sorry, your name again is? Yes, my name is Ben Coulter. Mr. Coulter. And you must not have actually checked in with Valerie personally. Did you speak to her earlier today? Yes. You did speak to her? Yeah. I mean, I certainly don't think that she is intentionally remembering anything different than I. And if I have failed to communicate, I am so sorry, really. It's okay. Our notes just, I've never had this happen in an oral argument. I've never had one where different lawyers are arguing than the one who's actually listed here. And in a different order than what we've actually had. Yeah, that's why I said when you came forward, I said Ms. Hyde, we'll hear from you. And then you came forward and introduced yourself. And I'm looking at the minutesheet trying to figure out who we're dealing with. So it's been pretty confusing. Why don't we give you two minutes to wrap up whatever else you wanted to say about RICO, and then we'll hear from Ms. Hyde. Okay. Well, I'll be really simple about it then. Here is our, I mean, we have other arguments in there. There's that in the briefing. You've read the briefing. I don't need to repeat things. Yeah. But I think the critical distinction here between what is a traditional racketeering situation and what's happened here is there is a statutory basis for the collection of garbage fees. Alabama has passed a law that allows for it. It can't be extortion. We cite, and obviously it's not binding on this court, a decision out of the Northern District of Alabama, the Malone case. It's based on the Prendergraf case, which is a decision of this court. And because there is a lawful, there is something lawful to collect. There is money that is owed under the garbage statute, garbage fee statute. It cannot be a violation. It cannot be the basis for a RICO claim. And the other thing, and I think the other distinction I think that they have failed to get to is, how can you distinguish between what Amwaste was doing in running a garbage collection business and fulfilling its contract with the city from some other improper act? What they have proven and what they've alleged in the complaint is we took over our contract and we collected garbage. And that's the end. Thank you, Mr. Coulter. We understand it. Now, are you Ms. Barrow or are you Ms. Hyde? I'm Ms. Hyde. Okay. That's good. Who is Ms. Barrow? Ms. Barrow is my associate working on the case. Okay. All right. Thank you. Let's hear from Ms. Hyde. May it please the court, Robbie Hyde here for the City of Valley. Yes, ma'am. Appellants' claims fell for three reasons. Number one, the City of Valley does not control the state court, magistrate, or prosecutor. Those were the officials who allegedly jailed the appellants. They were not jailed when cited for failure to pay garbage fees, but were jailed only after they didn't show up for court. And third, there is no constitutional claim. The record isn't really clear about that. Your Honor, I'll point you to a few things. And this is document 24. And page 21st is the citation. What is document 24? It is the city's supplemental appendix, Your Honor. In the appellate document 24. It's number 24 in the supplemental appendix. Now, what is the document? The document is the court record from the district court, the state district court. Okay. Criminal court. And how was that filed in the district court? That was filed with the motions to dismiss. And the court considered that based on the incorporation doctrine of those documents, which was not challenged by the plaintiffs.  Right, but, I mean, maybe I misread the document, but I didn't think that the docket particularly listed failure to appear as a charge. The dockets were set up for, obviously, the ultimate charge, which was the failure to pay garbage collection fees, certainly. However, in, I think, three or four documents in all three records from the state court, and, again, this is, the appellate record is document 24, just for clarity. Page 20, there is a citation that lists the court date for Ms. Little. Then there is an alias warrant issued, and this is on page 22 of that same document, listing a failure to appear on that court date. And, third, there is an appearance bond listed for the charge of FDA, and that is page 23. With regard to Mr. Gray, on page 20, excuse me, 32 of that same document, the criminal complaint is listed as failed to show up for court. And then, with regard to Ms. Khalifa, the criminal complaint, which is page 43 of document 24, which is the city's appendix, also lists a failure to show up for court, listed as FDA. So those were the items that specifically set out what has happened. The problem is, it seems to me, that don't we have to take the resident's version of events as true, and they allege that they were arrested solely for their failure to pay solid waste fees. I mean, I think you may win anyway. Instead of worrying about this failure to appear stuff, why don't we talk about that? The causation issue. Yeah, well, let's take their allegations as true. They allege that they were arrested only for failure to pay the fees. Isn't that right? That's correct. Is there a 1983 claim here? Is there a racketeering claim here? No, there's not. Take the racketeering claim first, low-hanging fruit. In their reply brief, footnote four, they concede the claim against the city, and specifically admit that there can be no mens rea as a matter of law as to a municipality for the purposes of RICO violation. So that's easy enough. I think that claim is gone. Next to the Section 1983 claim, first of all, there's no company. They're state officials that are the ones who make the decisions here. That's correct. And I would point to something that Your Honor mentioned earlier. There is a presumption of regularity, generally, and both the city, who is actually the victim here, and the citizens have a right to assume that the district court will follow the law and that there will be remedies. And the DA will follow the law, right? I'm sorry, and the DA will follow the law. The officials within the state court system, the judicial system, will follow the law. And if they don't, there are procedures within the state court system to address those. And those are procedures and functions over which the city has no control. Right. So that, in a nutshell, is our argument. With regard to the but-for and proximate cause issues, as a matter of law, you cannot say that there's but-for causation again because of the lack of control. How can there be but-for causation if the city doesn't make the decisions? The policymaker and issue here— There might be but-for. I mean, it might be that you would have a situation where the state officials aren't going to do anything unless there's a referral.  Under— But at the end of the day, the state officials, as a matter of law, make the decisions. That's correct. That's correct. And I think that just kind of puts a bow on it. Your Honors, would you like to hear anything else from me? Nope. Thank you so much. Thank you. Okay, Mr. Clark, you've saved some time for rebuttal. Very quickly with regard to whether or not the people were— and I don't think the Court is really concerned with that issue right now— whether they were actually convicted of failure to pay their garbage or failure to appear. I'm not at all concerned about that. All right. We cited and relied upon—and I recognize a district court case out of the Middle District, Carter v. City of Montgomery. But it cites the Board of Commissioners v. Brown, United States Supreme Court, which says, if municipal decision-makers have noticed— I can't just about tell everybody. I'm almost never going to read district court opinions. I wish I would just cite precedential opinions. I get it, Your Honors. That's very rarely very helpful. That's why I moved quickly to talking about Brown. And it says that when municipal decision-makers have noticed the program systematically causes civil rights violations, then they can be held liable for failing to take corrective action. In this case, we pled in this case that they had knowledge that people were being wrongfully imprisoned for not paying their garbage bills. The statute, neither the state statute nor the municipal ordinance call for that. So here you have the municipal policy-makers within the City of Valley with this knowledge continuing to refer people and make criminal complaints where it's reasonably foreseeable that they are going to end up in jail for an offense for which there is no jail time allowed under the statute. See, I don't understand why it wouldn't be the case that if the city refers someone to the state officials and the state officials prosecute them, why the city is responsible for any violation of state law. I mean, I would think the city would be entitled to rely upon the fact that the state officials, the DA, state courts, are going to follow the law. And if they're not following the law, you have an appeal for that. And I don't understand why it would be that they would be charged with violations of law by those independent state actors that they can't any more remedy than they can decide whether to prosecute in the first place. I'm sorry, I didn't mean that. No, that's it. The remedy is the choice of a different policy. And in this case, you have a statute that has a specific... Why wouldn't they assume that in fact, let's say they're all jailed and fined a million dollars, okay? And it's appealed to the Supreme Court of Alabama, affirmed, and cert is denied by the Supreme Court of the United States. If I'm a city official, I think the law is being followed over there. Well, first of all, that's not the facts. Well, I know it's not the facts. But you understand, I'm trying to make a point. The city officials make a referral to state officials who are wholly independent, make their own decisions. And however that turns out, should, as far as the state officials, I mean the city officials are concerned, whatever happens there is what the law allows to happen there. Well, let's make another... Let's say that the city officials are sending people to a prison where people are whipped and beaten, and they know it's happening all the time, right? And they say, look... You need to sue the people who are doing the whipping and the beating. If the people doing the whipping and the beating are employed by the state government, and they're violating their Eighth Amendment rights, it probably ought to sue those state employees, and to the extent that their supervisors are on notice about it, them too. Well, not under Brown, but also in this case, you have another alternative for the city. At the policymaking moment, they have a myriad of things. If they really were interested in collecting this money, the statute allows them to file a civil lawsuit, get 12 percent interest, and collect the debt just like anybody else would. Instead, what they're interested in doing is intimidating people into paying their garbage bills by everybody knowing you go to jail for that. So at the moment of the particular municipal decision, the policy choice was something they knew would end up in an unlawful jail. Okay, Mr. Clark, I think we understand your case, and that'll be it for today. We'll be in recess until tomorrow morning.